## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

|  |  |  |
|---|---|---|
| Gary D. Scheff, | ) | **ORDER RE: MOTION FOR** |
|  | ) | **DISCOVERY** |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| Blue Cross Blue Shield of North Dakota, | ) |  |
|  | ) | Case No.:  4:15-cv-173 |
|  | ) |  |
| Defendant. | ) |  |

_____

Before the Court is Plaintiff Gary D. Scheff's Motion for Discovery (Doc. No. 40).   For

the reasons given below, this motion is **DENIED**.

### I.      Background

The underlying suit stems from a disputed air ambulance bill in the amount of $57,750.

See Doc. No. 33. The following information is drawn from the administrative record in this case.

(Doc. Nos. 47-52).

On December 6, 2013, Scheff presented to the emergency room at Mercy Hospital in

Williston, North Dakota, with abdominal pain and distension. (Doc. No. 47, p. 13-14). He was

diagnosed with a small bowel obstruction. Id. His physician determined that Scheff should be

immediately transported to a hospital in Billings, Montana, which could provide a higher level of

care. (Doc. No. 47, p. 19). Valley Med Flight, Inc. ("VMF") transferred Scheff to Billings in a

medical transport aircraft. (Doc. No. 47, p. 13-14).

At the time of the medical transport, Scheff participated in an employee welfare benefit

plan through his employer, Go Wireline LLC. The Claims Administrator for the plan was

defendant Blue Cross Blue Shield of North Dakota ("BCBSND"). (Doc. No. 47, p. 28-32).

1

Terms of the plan are set forth in a document entitled "Summary Plan Description." (Doc. No. 47, pp. 28-113). According to the Schedule of Benefits contained therein, the plan distinguished between participating health care providers and non-participating health care providers. Under "Nonparticipating Health Care Providers," the Summary states:

> If a Member receives Covered Services from a Nonparticipating Health Care Provider within the state of North Dakota, benefit payments will be based on the Allowance and reduced by an additional 20%. The 20% payment reduction does not apply toward the Out-of-Pocket Maximum Amount. The Allowance will not exceed 80% of the billed charge.
>
> **The Member is responsible for the 20% payment reduction and any charges in excess of the Allowance for Covered Services.**

(Doc. No. 47, p. 40) (emphasis in original).

The term "Allowance" is defined later in the Summary as "the maximum dollar amount that payment for a procedure or service is based on as determined by the Claims Administrator." (Doc. No. 47, p. 102).

The dollar amounts for specific allowances are not provided in the Summary, but the allowances at issue in this case are set forth in a document entitled "Blue Cross Blue Shield of North Dakota Ambulance Fee Schedule." (Doc. No. 49, p. 13). According to the Ambulance Fee Schedule, one-way air ambulance service (Code A0430) was assigned a rate of $4,520.73, and air mileage (Code A0435) was assigned a rate of $14.98 per statute mile. (Doc. No. 49, p. 13).

VMF, the company which provided Scheff the emergency transport, was apparently a nonparticipating provider. (Doc. No. 49, p. 12). The "Claim Payment Review" provided by BCBSND in relation to this charge shows that VMF's charges for the air ambulance transport were significantly higher than the provided on the BCBSND Ambulance Fee Schedule. (Doc. No. 49, p. 12). For one-way air ambulance service, VMF charged $21,500, while BCBSND paid

2

$4,520.73. For mileage, VMF charged $125.00 per mile, while BCBSND paid $14.98 per mile. (Doc. No. 49, p. 12-13). The mileage rates were multiplied by 290 (presumably the number of miles flown by the air ambulance in this case) resulting in a total VMF mileage charge of $36,250.00 and a total BCBSND mileage payment of $4,344.20. Id.

Ultimately, VMF's charges totaled $57,750.00, and BCBSND's reimbursement totaled $8,864.93. Id. at 12. Scheff was left with a balance of $48,885.07. Id.

Scheff brought the instant complaint under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover the remaining balance from BCBSND, along with interest, attorneys' fees, and costs. He amended his complaint several times. See Doc. Nos. 1, 18, 33.

The action was stayed on November 16, 2016, to allow Scheff to re-submit his claim to the BCBSND claims administrator. (Doc. No. 32). After completion of this process, including an appeal submitted on March 16, 2019 (Doc. No. 51, p. 2), Scheff's claim was again denied. (Doc. No. 40, p. 3). The stay was lifted on November 13, 2018. (Doc. No. 39).

Shortly thereafter, Scheff filed the instant motion for leave to serve discovery requests on BCBSND. (Doc. No. 40). BCBSND responded in opposition, and Scheff replied. (Doc. No. 41, 42). The administrative record was filed on May 11, 2020. (Doc. Nos. 47-52).

## II.     Applicable Law

Federal Rule of Civil Procedure 26(b)(1) defines the general scope of discovery in federal courts as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The scope of discovery in ERISA cases is further curtailed, as described below.

### A.      General Prohibition on Discovery in ERISA Cases and Limited Exceptions

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), a person who is denied benefits under an employee benefit plan may challenge that denial in federal court. 29 U.S.C. § 1001 et seq., see § 1132(a)(1)(B).  In ERISA cases, review is generally limited to evidence that was before the administrator, and discovery is not allowed. See Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010). This limitation on evidence ensures "expeditious judicial review of ERISA benefit decisions" and prevents "district courts from becoming substitute plan administrators." Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993).

Yet there are some narrow exceptions to this general rule. A district court may permit the admission of additional evidence if the plaintiff shows "good cause" for the court to do so. Brown v. Seitz Foods, Inc., Disability Ben. Plan, 140 F.3d 1198, 1200 (8th Cir. 1998). Discovery may be permitted to establish either a palpable conflict of interest or serious procedural irregularity. See Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 776 n.4 (8th Cir. 1998). However, a conflict of interest or procedural irregularity "will ordinarily be apparent *on the face* of the administrative record or will be stipulated to by the parties." Farley, 147 F.3d at 776 n.4. As such, "the district court will only *rarely* need to permit discovery and supplementation of the record to establish these facts." Id. (emphasis added). For instance, in Jones, the Eighth Circuit held that an exception to the general prohibition on discovery was

4

unwarranted when the defendant conceded to the existence of a conflict of interest. Jones, 615 F.3d at 945.

In situations where a conflict of interest is *not* apparent from the record, a district court *may* permit discovery "*if* the plaintiff makes a showing of good cause." Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 871 (8th Cir. 2008) (citing Brown, supra) (emphasis added).

Furthermore, at least some courts have found additional justification for permitting increased discovery into conflict-of-interest factors after the 2008 Supreme Court case of Metro. Life Ins. v. Glenn, where the Court held that conflicts of interest exist in ERISA cases whenever the same entity both determines benefits eligibility under an ERISA plan and pays the benefits out of its own pocket. Glenn, 554 U.S. 105, 128 S. Ct. 2343, 2344, 171 L. Ed. 2d 299 (2008).[1]

## B.      Significance of Standard of Review

A federal court reviewing a plan administrator's denial of ERISA benefits exercises a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Waldoch v. Medtronic, Inc., 757 F.3d 822, 829 (8th Cir. 2014), as corrected (July 15, 2014) quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan grants such authority, the plan administrator's decision is reviewed for abuse of discretion, a "deferential" standard. Waldoch, 757 F.3d at 829, 832.

---

[1] The Eighth Circuit has not decided whether Glenn affects discovery limitations in ERISA cases. See Atkins v. Prudential Ins. Co., 404 F. App'x 82, 85 (8th Cir. 2010) ("We have not yet decided whether Glenn affects discovery limitations under ERISA. . ."). District courts have varied on the subject. See Winterbauer v. Life Ins. Co. of N. Am., 2008 WL 4643942, at *4-5 (E.D. Mo. Oct. 20, 2008) (surveying district-court interpretations of Glenn); see also Barnes v. Ascension Health Alliance, 2017 WL 3006882, at *2 (E.D. Mo. July 14, 2017) (same).

Certain past cases have based the decision on whether to allow discovery on the standard of review. For instance, the Eighth Circuit stated in 1998 that "[a]dditional evidence gathering is ruled out on deferential review, and discouraged on de novo review to 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'" Brown, 140 F.3d at 1200, citing Cash v. Wal–Mart Group Health Plan, 107 F.3d 637, 641–42 (8th Cir.1997). Yet the rule has evolved such that the above exceptions appear to apply in both deferential and de novo review. See Frerichs v. Hartford Life & Accident Ins. Co, 2011 WL 13352169, at *3 (D. Minn. May 17, 2011) (summarizing Eighth Circuit cases acknowledging that limited discovery can be permitted even in deferential review cases upon a showing of good cause).

Additionally, the question of standard of review may itself be a ground for admission of evidence beyond the administrative record. The general rule prohibiting discovery "is relaxed when evidence is admitted for the limited purpose of determining the proper standard of review." Waldoch, 757 F.3d at 830.

In sum, limited discovery may be permissible in certain ERISA cases, but only upon plaintiff's showing of good cause and in the court's discretion.

III.   **Analysis**

Scheff gives several justifications for his discovery request, some of which appear to run together. They can be roughly sorted into four broad categories. First, Scheff cites BCBSND's status as "back-up insurer" as a "palpable conflict of interest." Second, he ascribes BCBSND's reimbursement decision to its "contentious litigation" with Valley Med Flight, the air ambulance provider.  Third, he opines that the language of the appeal denials (authored after the case was

6

resubmitted to BCBSND) indicates that the denials were actually written by attorneys. Lastly, he appears to argue that BCBSND's decision was unjustified in general.

> ### A.    BCBSND's Role as Back-Up Insurer

Scheff first argues that BCBSND's status as back-up insurer constituted a "palpable conflict of interest," creating "financial and other improper motivations" which allegedly guided their adjudication of Scheff's claim. He cites the United States Supreme Court case of Metropolitan Life Ins. Co. v. Glenn on the subject:

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

Glenn, 554 U.S. at 108, citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Judging from the language of the plan, it does appear that BCBSND is liable for any portions of claims exceeding the "stop-loss" point of $25,000. See, e.g., Doc. No. 49, p. 19. Since BCBSND both determines whether Scheff was eligible for benefits and paid those benefits over the amount of $25,000, its dual role creates a conflict of interest as contemplated in Glenn. But, as Glenn dictates, "the significance of the factor will depend upon the circumstances of the particular case." Glenn, 554 U.S. at 108. The Eighth Circuit has held that such discovery is only appropriate if "a conflict of interest is *not* apparent from the record," and then only upon a showing of good cause. Menz, 520 F.3d at 871 (citing Brown, supra) (emphasis added).

Here, the conflict of interest *is* apparent from the record. The situation is analogous to Jones, where the court held that an exception to the general prohibition on discovery was

unwarranted because the defendant conceded that it was both insurer and administrator. Jones,

615 F.3d at 945. As BCBSND notes in its response, the essential facts regarding its status as

back-up insurer are clear from the administrative record. It is unclear what further information

Scheff is seeking. His allegation of bias due to BCBSND's dual role fails to constitute good

cause for discovery.

**B.     Litigation with VMF**

Scheff also argues contends that a conflict of interest exists based on the existence of

another suit between the defendants and Valley Med Flight. He writes:

> Mr. Scheff's claims denial also appears to be the product of improper
> motives – his provider had recently ended its participation agreement with
> BCBSND. BCBSND and VMF have also been engaged in contentious litigation
> with each other, particularly during the time period in which Mr. Scheff's appeals
> upon stipulated remand were being administered. See Valley Med Flight, Inc. v.
> Blue Cross Blue Shield of North Dakota, No. 3:16-cv-70 (D.N.D. 2016). Mr.
> Scheff believes his air ambulance claim (and perhaps more than 100 other
> transport claims) was caught in the middle of the dispute.

(Doc. No. 40, p. 4).

Scheff then alleges that BCBSND's "legal warring" with Valley Med Flight caused

"financial and other improper motivations to infect the entire process," resulting in an unfair

benefits determination.

Scheff's assertions on this subject are nothing more than speculation. They do not

constitute good cause to conduct discovery.

**C.     Denial Authorship**

Scheff's third justification for discovery is his suspicion regarding the authorship of his

final denial letter. Specifically, he hypothesizes that the letters denying his most recent appeal

were, in fact, "written by lawyers using 'pen names' of BCBSND employees.'" This impression

was apparently prompted by the "legalistic and highly technical details" and "verbose, lawyerly explanations" contained therein. On this foundation, he requests a variety of discovery, including metadata, to ascertain "the true authors of the denial letters."

Scheff failed to include a copy of the denial letter for the Court's review. But even if he had, the Court cannot see how his accusations could possibly merit further inquiry. As BCBSND points out in its response, Scheff cites no authority for the proposition that a claims denial could not be drafted by an attorney. Scheff attempts to answer this with a further hypothetical, arguing that *if* the denials *were* drafted by "outside counsel, under retainer to litigate multiple, similar issues," then those individuals would have a conflict of interest. Again, this is purely speculative. Against the background of ERISA cases and the general rule that discovery is not permitted, Scheff cannot justify discovery into a conflict of interest on the basis that such discovery could, hypothetically, reveal a conflict of interest. His circular reasoning is insufficient to constitute good cause for the wide-ranging discovery he requests.

## D.    Alleged Lack of Evidentiary-Based Rationale

Scheff's final justification for discovery is closely linked to his argument on the merits on the underlying case. In his words, "[t]he crux of Mr. Scheff's case is that BCBSND's actions in setting a reimbursement rate payable under Mr. Scheff's Plan were not based on any substantial evidence, analysis, or evaluation." (Doc. No. 40, p. 5). He accuses BCBSND of failing to justify its air ambulance reimbursement rate and/or failing to disclose any documentation of such justification, thereby violating its fiduciary duties under ERISA. He criticizes the Ambulance Fee Schedule for "[saying] nothing in terms of how BCBSND determined its rate. . . The outcome of Plaintiff's remand was predetermined." On the basis of this "extremely problematic" behavior, Scheff requests discovery "for evaluating the conflicts and determining the appropriate standard

of review." He also implies that other beneficiaries may not have been treated consistently by BCBSND.

In support of his request, Scheff cites numerous ERISA provisions, including: 29 C.F.R. § 2560.503-1 for the proposition that plan provisions must be applied "consistently with respect to similarly situated claimants;" 29 C.F.R. § 2560.503-1(g)(1)(v)(A) for the requirement that internal rules relied upon in making adverse determinations must be provided to the claimant; 29 C.F.R. § 2560.503-1(h)(2) regarding the requirement of full and fair review of claims; and, 45 C.F.R. § 147.136(D) stating the requirement that claims be adjudicated in a manner designed to ensure "independence and impartiality of the persons involved in making the decision."

Addressing first his requests for documentation of other individuals' air ambulance claims and benefit determinations, Scheff's claims are unavailing. He argues that if he was indeed treated consistently with respect to similarly-situated claimants, then BCBSND "should have no difficulty providing the documentation showing that it pays these same amounts to all its claimants, as well as supporting documentation concerning how it arrived at the determined maximum allowable amount." But determination of benefit eligibility under a plan is "an individualized matter with each claim to be considered on its own merits." Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 348 (8th Cir. 2007). And the mere possibility that a similarly-situated claimant *could* have been treated differently fails to constitute grounds for discovery. Scheff presents no convincing reason why discovery is necessary.

His final argument goes to the evidence underlying BCBSND's decision. In essence, Scheff is dissatisfied with BCBSND's use of the Ambulance Fee Schedule to adjudicate his benefit claim. When BCBSND points to the Ambulance Fee Schedule as justification for its reimbursement decision, Scheff responds that the fee schedule fails to explain how the fees

themselves were determined. Yet Scheff fails to show the significance of this missing explanation. The Court certainly agrees that rules, guidelines, or protocol which a plan administrator relied upon in making adverse determination must be provided to a claimant. If BCBSND had failed to do so, supplementation of the record would be ordered. But here, BCBSND has provided its guidelines.[2] The Court cannot see how its failure to provide the underlying rationale or thought process *behind* the fee schedule is "extremely problematic." Scheff cites no law stating that such information is required, and BCBSND's failure to comply with a non-requirement does not raise the specter of a procedural irregularity.

Scheff is welcome to make whatever attack he wishes against BCBSND's Ambulance Fee Schedule on the merits. But he fails to raise any suspicion of a serious procedural irregularity or conflict of interest such that discovery is appropriate in this case.

Nor is the Court persuaded by the argument that "BCBSND's abuse of the remand process" raises any questions as to the appropriate standard of review requiring supplemental evidence. While the determination of the appropriate standard of review is entirely out of the undersigned's hands, Scheff presents no good cause for additional discovery on the matter.

## IV.   Conclusion.

In ERISA cases, discovery is the exception, not the rule. Scheff appears to have a number of vigorous arguments as to the merits of this case. Yet his disagreement with the substance of BCBSND's decision does not rise to the level of a conflict of interest justifying discovery. The Court is not persuaded that this is one of the "rare" cases where discovery should be permitted. Farley, 147 F.3d at 776. Accordingly, Scheff's motion (Doc. No. 40) is **DENIED**.

---

[2] BCBSND also provides a letter shedding at least some light on the calculations behind its schedule. See Doc. No. 49, p. 14 ("Air ambulance rates for HCPCS codes A0430, A0431 and

**IT IS SO ORDERED**.

Dated this 10th day of June, 2020.

*/s/  Clare R. Hochhalter*
Clare R. Hochhalter
United States Magistrate Judge

---

A0436 have been increased and are based on the 2012 Medicare rural air ambulance rates.")